UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL J. KNEITEL,

                Plaintiff,

          -against-

NICHOLAS PALOS, MICHAEL KATZ, and THE
STATE OF NEW YORK UNIFIED COURT SYSTEM,

                Defendants.
-----------------------------------------------------------------X

D/F

**MEMORANDUM & ORDER**

**15-CV-2577 (NGG) (VVP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Michael J. Kneitel ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 on May 4, 2015. (Compl. (Dkt. 1).) Plaintiff's request to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915 (Dkt. 2) is GRANTED for the purpose of this Order. For the following reasons, however, Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

Plaintiff alleges that Defendants Nicholas Palos, Michael Katz, and the State of New York Unified Court System violated his constitutional rights in connection with child support proceedings in New York City Family Court, Kings County. Specifically, Plaintiff contends that from 2010 to the present, he filed "numerous motions" for downward modification of a child support order to which he was subject, seeking to adjust arrears and support payments because: (1) he paid "over three thousand dollars to the custodial parent and wished to receive credit for those payments;" (2) he was ordered to pay in excess of the statutory limit for child support; and (3) the custodial parent engaged in "constructive emancipation" and "deliberate frustration and active interference with visitation." (Compl. at 5.)[1] Plaintiff argues, however, that Defendants

---

[1] References to pages of the Complaint correspond to the page numbering assigned by the court's electronic docketing system (ECF).

1

"denied each and every motion, refused to address any motion to reconsider and reargue," and "refused to accept Plaintiff's appeal." (Id.) As a result, Plaintiff maintains that "[e]ach and every defendant deliberately violated the law and deprived plaintiff of his right to due process, a full and fair hearing, equal protection under the laws and his constitutional right to a direct appeal of the facts." (Id.) Plaintiff seeks for this court: (1) to "[a]ssume jurisdiction over this matter;" (2) to issue a temporary restraining order ("TRO") against the collection of the $500.00 in attorneys' fees he was ordered to pay on March 3, 2015; (3) to issue a declaratory judgment that "each and everyone one of these defendants violated plaintiff's right to due process and equal protection under the laws;" (4) to award compensatory damages; (5) to award punitive damages; and (6) to "[r]elieve the New York State Unified Court System of its jurisdiction over the child support and related cases." (Id. at 7-8.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an IFP action where it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

Pursuant to Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the pleadings stage, the court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 124 (2d Cir. 2010) (citing Iqbal, 556 U.S. at 678-79 (2009)), aff'd, 133 S.

2

Ct. 1659 (2013). Pro se complaints, in particular, are held to less stringent standards than pleadings drafted by attorneys, and courts are required to read plaintiffs' pro se complaints liberally, interpreting them as raising the strongest arguments they suggest. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9 (1980); Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

Nevertheless, "a district court may use its inherent authority to dismiss a case sua sponte if it determines that the action is frivolous." Ashmore v. New York, No. 12-CV-3032 (JG), 2012 WL 2377403, at *1 (E.D.N.Y. June 25, 2012) (citing Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000)), aff'd sub nom. Ashmore v. Prus, 510 F. App'x 47 (2d Cir. 2013) (summary order); see also id. ("Section 1915 . . . , for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision." (quoting Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 307-08 (1989))). An action is frivolous within the meaning of § 1915 when "the claim is 'based on an indisputably meritless legal theory.'" Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (quoting Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (quoting Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989))). A claim is based on an "indisputably meritless legal theory" when the claim either "lacks an arguable basis in law," or "a dispositive defense clearly exists on the face of the complaint." Id. (citing Benitez v. Wolff, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995)). "A dispositive defense clearly exists on the face of the complaint 'when it is clear that the defendants are immune from suit.'" Ashmore, 2012 WL 2377403, at *1 (quoting Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (citation and other internal quotation marks omitted)).

## III. DISCUSSION

Plaintiff's Complaint advances three central "claims." Plaintiff's first claim stems from a petition for downward modification of support payments, filed in family court on or about June 6, 2014, in which he argued the support order should be reduced on the grounds that Plaintiff's unemployment benefits fell below the federal poverty guidelines. (Compl. at 5.) According to Plaintiff, on or about December 15, 2014, Defendant Palos, a support magistrate, denied Plaintiff's motion,[2] which deprived Plaintiff of his rights to be free from unreasonable searches and seizures, to due process, and to equal protection, in violation of the federal and New York State constitutions. (Id.)

Plaintiff's second claim stems from a motion to terminate the order of support, filed in family court on or about September 3, 2014, in which he argued that his child support obligation should be terminated on grounds of constructive emancipation and the custodial parent's active interference and deliberate frustration with visitation. (Id. at 6.) Plaintiff alleges that in adjudicating this motion, Defendant Palos engaged in improper ex parte communications with the custodial parent, and that Defendant Katz, a family court judge, improperly denied Plaintiff's motion to compel discovery, request for assignment of counsel, and ultimately, his right to a full and fair hearing. (Id.) Plaintiff also alleges that in adjudicating an unspecified prior motion to terminate, Defendant Katz improperly refused to allow Plaintiff to introduce certain audio recordings into evidence and unlawfully awarded the custodial parent $500.00 in attorneys' fees. (Id.) Plaintiff maintains that Defendants' misconduct deprived him of his rights to be free from unreasonable searches and seizures, to due process, and to equal protection, in violation of the federal and New York State constitutions. (Id.)

---

[2] As of the date of the Complaint, Plaintiff's appeal from Defendant Palos's order was still pending. (Compl. at 5.)

Plaintiff's third claim concerns the entire Unified Court System of the State of New York, which Plaintiff argues "has demonstrated beyond any doubt that it is incapable of handling these judicial matters with any degree of fairness or reasonable degree of expeditiousness." (Id. at 6-7.) As support, Plaintiff contends that Defendants have "grossly miscalculated" the amount of child support he owes; have "threatened to incarcerate Plaintiff" if he fails to meet his financial obligations; and have refused to accept evidence and hear relevant testimony. (Id. at 7.) Thus, Plaintiff argues, because Defendants are "incapable of conducting full and fair hearings[,] while the appeal process simply rubberstamps illegal decisions," he has ultimately been deprived of his rights to be free from unreasonable searches and seizures, to due process, and to equal protection, in violation of the federal and New York State constitutions. (Id.)

While Plaintiff's claims, construed liberally, involve federal law to the extent they allege violations of his constitutional rights, it appears—at least on the face of his Complaint—that this court lacks subject matter jurisdiction pursuant to the so-called "domestic relations exception" to federal question jurisdiction. Moreover, even if Plaintiff's claims—interpreted as advancing the strongest possible arguments they suggest—did not fall within this exception, the court would dismiss his Complaint for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. In any event, each Defendant is also absolutely immune from suit in this case.

## A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Pursuant to Article III of the Constitution, Congress has granted district courts jurisdiction to hear only those cases in which there is either a federal question or diversity of citizenship. Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002). "Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be

raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.") Thus, "before deciding any case," the court is required to assure itself that the case is properly within its subject matter jurisdiction. Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001).

Where, as here, there is no diversity of citizenship (see Compl. at 4), the court must have subjection matter jurisdiction over the action as a federal question. Federal question jurisdiction is invoked where a plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case arises under federal law within the meaning of the general federal question statute only if the federal question appears in the facts of the plaintiff's well pleaded complaint." Renner v. Stanton, No. 13-CV-1676 (DLI), 2013 WL 1898389, at *2 (E.D.N.Y. May 7, 2013) (citing Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908)).

1. Domestic Relations Exception

Plaintiff's Complaint, even liberally construed, fails to present a federal question. Instead, Plaintiff asserts claims concerning domestic relations—specifically, child support. Federal courts generally lack subject matter jurisdiction over such claims. See, e.g., Puletti v. Patel, No. 05-CV-2293 (SJ), 2006 WL 2010809, at *4 (E.D.N.Y. July 14, 2006) (noting the Supreme Court has "long recognized that 'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United

States.'" (quoting In re Burrus, 136 U.S. 586, 593-94 (1890)). "So strong" is the Supreme Court's deference to state law in this area that it has recognized a "'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'" Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12-13 (2004) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992)), abrogated on other grounds, Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386-88 (2014); see also Martinez v. Queens Cnty. Dist. Attorney, No. 12-CV-6262 (RRM) (RER), 2014 WL 1011054, at *8 (E.D.N.Y. Mar. 17, 2014) ("It is well-settled that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (citation and internal quotation marks omitted)).

Moreover, even where subject matter jurisdiction may exist over a particular domestic relations matter, "federal courts should abstain from entertaining such actions in light of sound policy considerations." Puletti, 2006 WL 2010809, at *4; see also Ankenbrandt, 504 U.S. at 704 (noting that "as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue [child custody] decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees"); Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990) ("[E]ven if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field."). Thus, district courts typically "dismiss civil rights actions aimed at changing the results of domestic proceedings, including orders of child custody." Elmasri v. England, 111 F. Supp. 2d 212, 220 (E.D.N.Y. 2000); see also Block, 905 F.2d at 14 ("A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature

7

should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts.").

However characterized, Plaintiff's claims fundamentally challenge state court child support orders. See Ashmore, 2012 WL 2377403, at *1 ("Federal courts 'lack [] jurisdiction to interfere with . . . ongoing state court proceedings concerning the custody and care of . . . children.'" (quoting Abidekun v. N.Y.C. Bd. of Educ., No. 94-CV-4308 (FB), 1995 WL 228395, at *1 (E.D.N.Y. Apr. 6, 1995))). Although he invokes his constitutional rights, Plaintiff's claims are "directly related" to the custody proceedings. Puletti, 2006 WL 2010809, at *4. (See, e.g., Compl. at 5 ("This action initially stems from a child support proceeding in which each and every defendant either [sic] sought to deprive plaintiff of his rights to due process and equal protection under the laws.").) As a result, this court lacks subject matter jurisdiction over Plaintiff's claims. See Schottel v. Kutyba, No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (summary order) ("Although we recognize that the domestic relations 'exception is very narrow,' a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." (quoting Williams v. Lambert, 46 F.3d 1275, 1283 (2d Cir. 1995)); Sullivan v. Xu, No. 10-CV-3626 (ENV), 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) (noting that "[a]lthough plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters," and dismissing the action pursuant to the domestic relations exception).

Plaintiff claims that Defendants violated his constitutional rights by improperly calculating arrears and support payment obligations, engaging in ex parte communications, refusing to admit certain evidence, denying procedural motions, awarding the custodial parent attorneys' fees, and threatening to incarcerate him upon failure to comply with court orders.

8

(See Compl. at 5-7.) Thus, it is obvious from the face of the Complaint that resolution of Plaintiff's claims would force this court to "re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings," which "is not the role of this court." McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992). In fact, three of Plaintiff's specific claims for relief explicitly request that this court "directly interfere with the state-court custody determination." Ashmore, 2012 WL 2377403, at *2. (See Compl. at 7 (requesting that the court (1) "[a]ssume jurisdiction over the matter;" (2) issue a TRO against Defendant Katz's March 3, 2015, order awarding attorneys' fees; and (6) "[r]elieve the New York State Unified Court System of its jurisdiction over [] child support and related cases").)

Moreover, while Plaintiff's remaining requests concern declaratory and monetary relief, the substance of these claims is not distinguishable. See, e.g., Ashmore, 2012 WL 2377403, at *2 (dismissing action for lack of subject matter jurisdiction pursuant to the domestic relations exception, where plaintiff argued that the state court violated his due process rights in admitting hearsay testimony in child custody determination); see also Mitchell-Angel v. Cronin, 101 F.3d 108, 1996 WL 107300, at *2 (2d Cir. Mar. 8, 1996) (unpublished table decision) (observing that district courts have found the domestic relation exception applies to civil rights actions directed at challenging the results of domestic relations proceedings). Moreover, Plaintiff has failed to plead facts that, even read liberally, suggest that New York state courts are not <u>available</u> for a full and fair adjudication of his claims. See Block, 905 F.2d at 14; Ashmore, 2012 WL 2377403, at *3 ("While plaintiff, who appealed the judgment entered against him in state court, may not have succeeded in obtaining declaratory relief, he has not alleged facts to suggest that such relief was unavailable.").

Therefore, the court finds this action must be dismissed for lack of subject matter jurisdiction. See Elmasri, 111 F. Supp. 2d at 221; see also Graham v. Criminal Court of the City of N.Y., No. 15-CV-337, 2015 WL 427981, at *3 (E.D.N.Y. Feb. 2, 2015) (dismissing action under the domestic relations exception where plaintiff sought to have the court "intervene and vacate various orders that were issued in her state child custody proceedings"); Awan v. Kramer, No. 12-CV-5092 (JG), 2012 WL 5426088, at *2-3 (E.D.N.Y. Nov. 7, 2012) (noting that although plaintiff alleged constitutional violations, he did not present "a substantial federal issue that transcends or exists apart from the family law issue" (citation and internal quotation marks omitted)); McKnight v. Middleton, 699 F. Supp. 2d 507, 519-20 (E.D.N.Y. 2010) ("At heart, he is complaining of the state court custody proceedings and thus his claims are indistinct from the domestic dispute. Plaintiff may not 'rewrit[e his] domestic dispute as a tort claim,' or a civil rights claim by simply requesting only monetary damages." (quoting Schottel, 2009 WL 230106, at *1)) (internal citation omitted).

2. Rooker-Feldman Doctrine

Although the court finds that Plaintiff's entire action is barred pursuant to the domestic relations exception to federal question subject matter jurisdiction, the court notes that the Second Circuit has yet to directly address whether the domestic relations exception applies to federal constitutional claims seeking monetary damages—as opposed to claims seeking issuance or modification of child custody decrees. See Ashmore, 510 F. App'x at 49 ("We expressly decline to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions."); King v. Comm'r and N.Y.C. Police Dep't, 60 F. App'x 873, 875 (2d Cir. 2003) (summary order) ("Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages.

The domestic relations exception to federal jurisdiction is therefore irrelevant to this action."). As a result, some district courts have declined to rely exclusively on this exception in dismissing constitutional challenges to state court child custody proceedings. See, e.g., Fernandez v. Turetsky, No. 12-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *2-3 (E.D.N.Y. Nov. 7, 2014). Alternatively, these courts have dismissed complaints based on child custody proceedings for failure to state a claim under the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also Remy v. N.Y. State Dep't of Taxation & Fin., 407 F. App'x 16, 18 (2d Cir. 2013) (summary order) ("'A challenge under the Rooker-Feldman doctrine is for lack of subject matter jurisdiction.'" (quoting Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996), abrogated on other grounds, Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005))).

The Rooker-Feldman doctrine divests federal courts of jurisdiction to consider suits that seek to overturn state court judgments, Exxon Mobil, 544 U.S. at 284, and suits bringing claims that are "inextricably intertwined with a prior state court determination," Johnson v. Smithsonian Inst., 189 F.3d 180, 185 (2d Cir. 1999) (citation and internal quotation marks omitted). Under Rooker-Feldman, a district court does not have the authority to review final judgments of a state court judicial proceeding, except for general constitutional challenges and reviews pursuant to a writ of habeas corpus, see, e.g., Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau, No. 07-CV-3755 (JFB) (AKT), 2009 WL 580426, at *6 n.6 (E.D.N.Y. Mar. 5, 2009), or by way of certiorari petition to the Supreme Court, King, 60 F. App'x at 875. The Second Circuit has clarified that Rooker-Feldman directs federal courts to abstain from considering claims when four requirements are met: "(1) the plaintiff lost in state court, (2) the plaintiff complains of

injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." McKithen v. Brown, 626 F.3d 143, 154 (2d Cir. 2010); see also Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). In addition, "'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . , subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion." King, 60 F. App'x at 875 (quoting Moccio, 95 F.3d at 199-200).

"Courts have repeatedly invoked [Rooker-Feldman] in cases . . . in which plaintiffs challenge family court decrees setting child support arrears." Fernandez, 2014 WL 5823116, at *4 (citing Remy, 507 F. App'x at 18-19; Sorenson, 2009 WL 580426, at *6 (dismissing case pursuant to Rooker-Feldman where plaintiff's claims "all arise from the purported violation of his constitutional rights" based upon the attempt to collect child support arrears); Chestnut v. Gabler, No. 06-CV-534, 2007 WL 529556, at *3 (W.D.N.Y. Feb. 13, 2007) (collecting cases)). Plaintiff's claims in this case also fall within the purview of this doctrine. He (1) has repeatedly lost in state court proceedings; (2) complains of injuries caused by those judgments; (3) invites this court to review those judgments by requesting that it "assume jurisdiction" over the matter (and, in fact, others); and (4) filed this action after those judgments had been issued. See McKithen, 626 F.3d at 154. Thus, insofar as Plaintiff seeks to have this court directly review the prior state court judgments, this court lacks subject matter jurisdiction under Rooker-Feldman. See Remy, 507 F. App'x at 18-19. Moreover, to the extent Plaintiff recasts his claims as alleging constitutional violations resulting from the enforcement of the support order (including, for example, his request for a TRO against the collection of attorneys' fees), Rooker-Feldman also

bars such claims because these claims are "inextricably intertwined" with the state court judgment. See King, 60 F. App'x at 875-76; see also Ashmore, 510 F. App'x at 48-49 (finding plaintiff's request for injunctive or declaratory relief—relating to the admission of specific testimony in New York State custody proceedings to which he was a party—to be barred by collateral estoppel); see also Fernandez, 2014 WL 5823116, at *4; Sorenson, 2009 WL 580426, at *7.

Consequently, even if the domestic relations exception did not bar this action, Plaintiff's Complaint must be dismissed for failure to state a claim as a result of the Rooker-Feldman doctrine. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Immunity Defenses

Not only does Plaintiff fail to plead subject matter jurisdiction, but this action is also frivolous because all of the Defendants are clearly immune from suit, and thus, a dispositive defense clearly exists on the face of the Complaint. See id. § 1915(e)(2)(B)(i); Montero, 171 F.3d at 760.

#### 1. Sovereign Immunity

Plaintiff's claims against the New York State Unified Court System are barred by the doctrine of sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution. "In interpreting the Eleventh Amendment . . . , the Supreme Court has consistently held that 'nonconsenting States may not be sued by private individuals in federal court.'" Renner, 2013 WL 1898389, at *4 (quoting Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001)); see also Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (holding that the New York State Unified Court System is entitled to sovereign immunity as an arm of the State). Moreover, courts have long held that § 1983 does not abrogate states' immunity under

the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-67 (1989); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990). In addition, Plaintiff has not alleged, nor is there any indication, that the Unified Court System has expressly waived its immunity. See Renner, 2013 WL 1898389, at *4. Accordingly, Plaintiff's claims seeking both monetary and injunctive relief from Defendant Unified Court System must be dismissed. See McGinty v. New York, 251 F.3d 84, 91 (2d Cir. 2001).

### 2. Judicial Immunity

Plaintiff's claims against Defendants Palos and Katz are barred by the doctrine of absolute judicial immunity. "It is well settled that judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities." Renner, 2013 WL 1898389, at *3 (citing Mireles v. Waco, 502 U.S. 9, 11 (1991); Forrester v. White, 484 U.S. 219, 225 (1988)); see also id. (noting that Pierson v. Ray, 386 U.S. 547, 554-55 (1967), explicitly extended judicial immunity to actions brought pursuant to § 1983). "Judicial immunity is an absolute immunity from suit, not just from the ultimate assessment of damages." Ashmore, 2012 WL 2377403, at *2. Moreover, "[a]bsolute judicial immunity 'is not overcome by allegations of bad faith or malice,' nor can a judge 'be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" Renner, 2013 WL 1898389, at *3 (quoting Mireles, 502 U.S. at 11, 13). Rather, "[j]udicial immunity may be overcome only when a judge takes action not in his or her judicial capacity or the actions at issue were taken 'in the complete absence of all jurisdiction.'" Pappas v. Zimmerman, No. 13-CV-4883 (JS) (GRB), 2014 WL 3890149, at *5 (E.D.N.Y. Aug. 6, 2014) (quoting Mireles, 502 U.S. at 12).

Plaintiff does not argue that Defendants Palos and Katz took actions that were outside their judicial capacities; in fact, he alleges the opposite. (See Compl. at 5-7.) Instead,

interpreting Plaintiff's Complaint as raising the strongest argument it suggests, his claim that Defendants "acted outside of the law" (id. at 7), may be construed as alleging that their actions were taken "in the complete absence of all jurisdiction." "A judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." Levine v. Lawrence, No. 03-CV-1694 (DRH) (ETB), 2005 WL 1412143, at *7 (E.D.N.Y. June 15, 2005) (citing Stump v. Sparkman, 435 U.S. 349, 357 n.7 (1978)). Furthermore, "[t]he scope of a judge's jurisdiction 'must be construed broadly where the issue is the immunity of the judge.'" Renner, 2013 WL 1898389, at *3 (quoting Stump, 435 U.S. at 356). Plaintiff's Complaint, however, references only actions taken in the underlying child support proceedings, which are clearly within the subject matter of New York State courts. See, e.g., id.; Sanchez-Preston v. Luria, No. 96-CV-2440 (CPS), 1996 WL 738140, at *5 (E.D.N.Y. Dec. 17, 1996) ("According to New York law, the New York Family Court has exclusive original jurisdiction over custody proceedings, including custody termination." (citing N.Y. Fam. Ct. Act § 115(a), (b))). Thus, Plaintiff is clearly unable to overcome Defendants' judicial immunity from any of his claims for civil damages under § 1983.

That Plaintiff also seeks injunctive and declaratory relief in this case does not affect Defendants' entitlement to absolute judicial immunity. "Although the *judicially* created doctrine of judicial immunity does not bar a claim for prospective injunctive relief against a judicial officer acting in his judicial capacity," Ashmore, 2012 WL 2377403, at *3 (emphasis added) (citing Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)), Congress provided for such immunity within the text of § 1983 itself. The statute provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

42 U.S.C. § 1983. Plaintiff's Complaint does not allege that a declaratory decree was ever entered or suggest that declaratory relief was unavailable. See, e.g., Ashmore, 2012 WL 2377403, at *3. "Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." Id. (quoting LeDuc v. Tilley, No. 05-CV-157 (MRK), 2005 WL 1475334, at *7 (D. Conn. June 22, 2005)). While Plaintiff, who appealed the judgments entered against him in state court, may not have succeeded in obtaining that declaratory relief, he has not alleged any facts suggesting that such relief was unavailable. See id. As a result, Defendants Palos and Katz are also absolutely immune from Plaintiff's claims for declaratory and injunctive relief under § 1983.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the court finds that it lacks subject matter jurisdiction to adjudicate Plaintiff's claims; even if the court did have jurisdiction, Plaintiff would not be able to overcome Defendants' absolute immunity to suit. Moreover, while courts generally should not dismiss pro se complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), courts may deny plaintiffs the opportunity to amend "when amendment would be futile," Fulton v. Goord, 591 F.3d 37, 45 (2d Cir. 2009). Here, the Complaint provides no indication that Plaintiff has a colorable claim under federal law; further amendment would clearly be futile. See, e.g., Renner, 2013 WL 1898389, at *4. Consequently, Plaintiff's complaint is DISMISSED WITH PREJUDICE.

Furthermore, Plaintiff is warned against filing repetitious and duplicative actions in this Court.[3] See, e.g., Hong Mai Sa v. Doe, 406 F.3d 155, 158 (2d Cir. 2005); Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
June 4, 2015

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[3] This court has previously dismissed a similar action by this very Plaintiff under the domestic relations exception to federal question subject matter jurisdiction. See Kneitel v. Doar, No. 11-CV-5852 (NGG), 2011 WL 6179276, at *2 (E.D.N.Y. Dec. 12, 2011).